UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Civil Action No. 20-CV-00943

    v.

ABRAHAM FREUND, and
ACACIA MENTAL HEALTH
CLINIC, LLC,

                Defendants.

## COMPLAINT

Plaintiff, the United States of America ("United States"), alleges for its complaint as follows:

### Introduction

1.    The United States brings this action against Defendants Abraham Freund ("Freund") and his company, Acacia Mental Health Clinic, LLC ("Acacia"), for monetary damages, penalties, and injunctive relief arising out of the Defendants' breach of a Settlement Agreement, Promissory Note, and Mortgage.

2.    The United States previously sued Freund and Acacia under the False Claims Act, 31 U.S.C. § 3729-3733, alleging that Freund and Acacia submitted millions of dollars of false claims to the Wisconsin Medicaid program. *See United States v. Acacia Mental Health Services and Abe Freund*, 16-cv-1718 (Eastern District of Wisconsin) (hereinafter the "FCA Action").

3.    The parties settled the FCA Action pursuant to a Settlement Agreement effective March 26, 2019 (the "Settlement Agreement"). Among other things, Freund and Acacia agreed

in the Settlement Agreement to pay $2,200,000 in a series of cash payments, including payments totaling $950,000 as provided by a Promissory Note that accompanied the Settlement Agreement. Freund and Acacia, however, breached the Settlement Agreement and Promissory Note by failing to make required payments when due.

4.      Freund also provided a Mortgage on property located in New York State to secure the settlement payments. The Mortgage required the United States' consent prior to any conveyance of that property. Freund, however, transferred the property to a limited liability company without the government's consent. Upon information and belief, the United States also believes that Freund conveyed the property for no consideration and that Freund controls the company to which he conveyed the property.

5.      The United States thus seeks to recover monetary damages and penalties from Freund and Acacia arising from their breach of the Settlement Agreement and Promissory Note as well as an order avoiding the fraudulent conveyance of the mortgaged property.

## Jurisdiction

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345.

7.      The Court has personal jurisdiction over Freund and Acacia, and venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391 and 3004, because Freund and Acacia transact business in the United States and in the Eastern District of Wisconsin and because they consented to litigation in this District in the Settlement Agreement.

## Parties

8.      The plaintiff is the United States of America.

9.      Defendant Freund is a citizen of the United States who resides in Monroe, New York, and is the owner and chief executive officer of Acacia.

2

10.     Defendant Acacia is a Wisconsin limited liability company that formerly provided mental health services at 5228 West Fond du Lac Avenue, Milwaukee, Wisconsin.

### The FCA Action and Settlement

11.     In the FCA Action, the United States alleged that Freund and Acacia defrauded the Wisconsin Medicaid program in three ways to obtain money to which they were not entitled. First, Freund and Acacia submitted false and fraudulent claims that misrepresented that Acacia provided complex, expensive urine drug testing, when, in fact, Acacia provided inexpensive tests. Second, Freund and Acacia submitted false and fraudulent claims for urine drug tests that the Defendants knew their patients did not need. Finally, Freund and Acacia submitted false and fraudulent claims for telemedicine services rendered by psychiatrists located outside the United States in violation of Medicaid rules. As provided by the FCA, the government sought civil penalties for each false claim and treble damages in excess of $10 million.

12.     During the pendency of the FCA Action, the government discovered that Freund and Acacia took actions to hinder the government's ability to recover on its claims, including Freund's fraudulent conveyance of two properties to his children for far less than market value. The government thus sought, and the district court granted, prejudgment writs of attachment against five properties owned by Freund. *See* FCA Action, Doc. 38.

13.     The parties to the FCA Action thereafter entered into a Settlement Agreement effective March 26, 2019. A copy of the Settlement Agreement is attached hereto as Exhibit A.

14.     The parties to the Settlement Agreement were represented by legal counsel and exchanged good and valuable consideration for their mutual agreements and promises therein. The Settlement Agreement is thus a valid and enforceable written contract.

15.     The Settlement Agreement required that Freund and Acacia, *inter ala,* pay $2,200,000 in a series of settlement payments.  *See* Ex. A at § 1.

16.     In exchange for these settlement payments and the Defendants' other commitments in the Settlement Agreement, the United States dismissed the FCA Action and provided certain releases to the Defendants.  The United States has fully complied with its obligations under the Settlement Agreement.

## Defendants' Breach of the Settlement Agreement

17.     Freund and Acacia were required to pay $955,224.62, plus interest at 2% per annum, within 120 days after the Effective Date of the Settlement Agreement (the "Section 1(B) payment").  Ex. A at § 1(B).

18.     The government subsequently agreed to extensions of the due date for the Section 1(B) payment through October 25, 2019.

19.     To date, however, Freund and Acacia have paid only $768,003.18 toward the Section 1(B) payment.  The United States has demanded payment of the remaining balance, plus interest, but Freund and Acacia have failed to pay it.

20.     Freund and Acacia thus owe $201,582.45, including interest, toward the Section 1(B) payment as of the date of this complaint.  Interest on this payment continues to accrue at the rate of 2% per annum.

## Defendants' Breach of the Promissory Note

21.     As required by the Settlement Agreement, Freund and Acacia also executed a Promissory Note requiring payment of an additional $950,000, plus interest at 5% per annum, over a period of five years.  Ex. A. at § 1(C).  A copy of the Note is attached hereto as Exhibit B.

4

22.     The Promissory Note required Freund and Acacia to make a first payment of $190,000 by March 31, 2020.  *See* Ex. B at § 1.  Despite demand by the United States for the payment due by March 31, 2020, Freund and Acacia have failed to make that payment.

23.     The Promissory Note provides that Freund and Acacia commit an Event of Default if, as relevant here, they fail to pay any amount required by the Note within 10 days of the date such payment was due and payable.  Ex. B at § 5(B).  Freund and Acacia have thus defaulted under the terms of the Promissory Note.

24.     Although the Promissory Note afforded Freund and Acacia 10 business days to cure the Event of Default described in paragraph 23, Freund and Acacia failed to cure their default within that time.

25.     As a consequence of Freund's and Acacia's default and failure to cure, the total outstanding balance due under the Promissory Note as of March 31, 2020 in the amount of $997,500 immediately increased to $1,496,250 (the "Default Amount").  Ex. B at § 7(A).  The Default Amount is immediately due and payable, with interest accruing on the Default Amount from March 31, 2020 at 12% per annum, compounded daily.  *Id.* § 7(B).

26.     Freund and Acacia have not made any payments toward the outstanding Default Amount.  They thus owe a Default Amount of $1,528,423.67, including interest, as of the date of this complaint.  Interest on the Default Amount continues to accrue at the rate of 12% per annum, compounded daily.

27.     The Promissory Note also provides that Freund and Acacia will pay the United States all reasonable costs of collection, including reasonable attorney's fees and expenses.  Ex. B at § 7(F).

**Freund's Fraudulent Conveyance of the Mortgaged Property**

5

28.     As part of the Settlement Agreement, Freund also agreed to execute a Mortgage in favor of the United States on certain real property located at 159 Acres Road, Unit 204, Monroe, New York (the "Mortgaged Property").  Ex. A at § 1(D); Ex. B at § 4.  Freund executed the Mortgage on March 22, 2019.  A copy of the Mortgage in attached hereto as Exhibit C.

29.     Pursuant to the Mortgage, Freund agreed not to transfer, sell, or convey the Mortgaged Property without the prior written consent of the United States.  Ex. C at § IX.

30.     In violation of his agreement in the Mortgage, and without providing notice to or receiving the consent of the United States, Freund conveyed the Mortgaged Property by quitclaim deed to an entity called 159 Acres Road LLC on February 19, 2020.

31.     Upon information and belief, Freund conveyed the Mortgaged Property to 159 Acres Road LLC for no consideration.

32.     Upon information and belief, Freund controls 159 Acres Road LLC.

33.     Upon information and belief, Freund conveyed the Mortgaged Property to 159 Acres Road LLC with the intent to hinder the government's ability to foreclose on its interest in the Mortgaged Property.

## Count I – Breach of the Settlement Agreement

34.     The government incorporates paragraphs 1 through 33 of this Complaint as if set forth fully herein.

35.     Freund and Acacia have breached the Settlement Agreement because they have failed to pay the full amount of the Section 1(B) payment.

36.     Freund's and Acacia's breach of the Settlement Agreement is material and has caused the United States to suffer damages in the form of the loss of the outstanding balance of

6

the Section 1(B) payment, plus interest at the rate of 2% per annum, as well as the loss of the use of said monies.

**Count II – Breach of the Promissory Note**

37.    The government incorporates paragraphs 1 through 36 of this Complaint as if set forth fully herein.

38.    Freund and Acacia have breached the Promissory Note and committed an Event of Default under the terms of the Promissory Note because they have failed to pay the $190,000 payment due on March 31, 2020.

39.    As a result of their default and failure to cure within the time provided by the Promissory Note, Freund and Acacia owe the United States the Default Amount, plus interest accruing at the rate of 12% per annum, compounded daily. Freund and Acacia have failed to make any payments toward the Default Amount.

40.    Freund's and Acacia's breach of the Promissory Note and default under the Promissory Note are material and caused the United States to suffer damages in the form of the loss of the Default Amount, plus interest at the rate of 12% per annum, compounded daily, as well as the loss of the use of said monies.

**Count III – Avoidance of Transfer of Mortgaged Property Pursuant to Federal Debt Collection Procedures Act**

41.    The government incorporates paragraphs 1 through 40 of this Complaint as if set forth fully herein.

42.    The Federal Debt Collect Procedures Act provides that the United States may obtain the avoidance of a fraudulent transfer of property by a debtor to the United States, such as Freund. *See* 28 U.S.C. § 3306.

7

43.     Freund's conveyance of the Mortgaged Property constituted a fraudulent transfer because Freund concealed the conveyance in violation of the Mortgage, because Freund conveyed the Mortgaged Property for no consideration, and because Freund conveyed the Mortgaged Property to a limited liability corporation that he controls.  *See* 28 U.S.C. § 3304(b).

44.     Freund thus conveyed the Mortgaged Property with the intent to hinder the government's ability to foreclose on its interested in the Mortgaged Property, and the conveyance should be avoided.

### Prayer for Relief

WHEREFORE, the United States demands and prays that the Court enter judgment in its favor against Freund and Acacia as follows:

I.      On the First Count, for the amount of the United States' damages for breach of Section 1(B) of the Settlement Agreement, including interest at the rate of 2% per annum until the date of the judgment, together with all such further relief as may be just and proper.

II.     On the Second Count, for the amount of the Default Amount, including interest at the rate of 12% per annum, compounded daily, until the date of the judgment, as well as the United States' reasonable costs of collection, including attorney's fees and expenses, together with all such further relief as may be just and proper.

III.    On the Third Count, for an order avoiding the transfer of the Mortgaged Property and providing for a writ of attachment on the Mortgaged Property for it to be held for security in satisfaction of any judgment awarded in this case.

IV.     On all Counts, any applicable statutory surcharge, including the 10 percent surcharge authorized by 28 U.S.C. § 3011.

8

The United States demands a jury trial on each of the issues so triable in this case.

Dated this 24th day of June, 2020.

MATTHEW D. KRUEGER
United States Attorney

By:     /s Michael A. Carter

MICHAEL A. CARTER
EMILY A. CONSTANTINE
Assistant United States Attorneys
Eastern District of Wisconsin
State Bar No. 1090041
State Bar No. 1087257
517 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 297-4101
Fax: (414) 297-4394
Michael.A.Carter@usdoj.gov
Emily.Constantine@usdoj.gov

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), the State of Wisconsin ("Wisconsin"), Rose Presser ("Presser"), Acacia Mental Health Clinic, LLC ("Acacia"), Abraham Freund ("Freund"), and Isaac Freund ("Isaac") (hereafter, the United States, Wisconsin, Presser, Acacia, Freund, and Isaac are collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.      Acacia is a Wisconsin limited liability company that, until it ceased operations in June 2017, had its principle place of business at 5228 West Fond du Lac Avenue, Milwaukee, Wisconsin.  Freund is the owner and chief executive of Acacia.  Isaac is Freund's son and was involved in the operations of Acacia.

B.      On January 18, 2013, Presser filed a qui tam action in the United States District Court for the Eastern District of Wisconsin captioned *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC and Abe Freund*, Case No. 13-CV-71, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Presser Action").  Presser alleged that Acacia submitted false claims to Federal health care programs, including the Wisconsin Medical Assistance Program, for mental health and drug dependency services, including claims for multiple and unnecessary evaluation services, urine drug screens, and office visits.  The Presser Action was dismissed on March 2, 2017 (Dkt 72) following the United States' filing of the suit described in recital C, below.

C.      On December 28, 2016, the United States filed an action in the United States District Court for the Eastern District of Wisconsin captioned *United States v. Acacia Mental*

EXHIBIT
A

*Health Clinic et al.*, No. 16-cv-1718 (the "Civil Action"). Wisconsin intervened in the Civil Action on September 22, 2017.

D. In the Civil Action, the United States and the State of Wisconsin allege that Acacia and Freund submitted or caused to be submitted false claims for payment to Wisconsin's Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Wisconsin Medicaid").

E. The United States and State of Wisconsin contend that, between January 1, 2011 and October 31, 2012, Acacia performed urine drug screens for its Medicaid patients with point-of-care cups. At that time, Wisconsin Medicaid reimbursed providers for urine drug screens performed with point-of-care cups under Current Procedural Terminology Code 80104 at the rate of approximately $20 per test (regardless of the number of drug classes for which the cup tested). The United States and the State of Wisconsin contend that, between January 1, 2011 and October 31, 2012: (1) at Freund's direction, Acacia submitted claims to Wisconsin Medicaid under a different code (Current Procedural Terminology Code 80101) with a separate unit for each drug class tested, although Current Procedural Terminology Code 80101 was appropriate only for more sophisticated tests performed using laboratory equipment that Acacia did not possess; (2) at Freund's direction, Acacia also misrepresented to Wisconsin regulators that it possessed the laboratory equipment necessary to perform tests covered by Current Procedural Terminology Code 80101 to conceal its allegedly false billings; (3) Acacia and Freund knew that, by submitting claims for urine drug screens performed at Acacia under Current Procedural Terminology Code 80101, they were misrepresenting the types of tests performed to Wisconsin Medicaid; and (4) by submitting these allegedly false claims to Medicaid, Acacia and Freund improperly increased the reimbursement received from Wisconsin Medicaid by hundreds of dollars per test.

F.      The United States and the State of Wisconsin further contend that, between November 1, 2012 and December 31, 2014, at Freund's direction and with Isaac's involvement, Acacia performed medically unnecessary and duplicative urine drug screens for its Medicaid patients.  More specifically, the United States and the State of Wisconsin contend that almost every Medicaid patient during this period received at nearly every visit a point-of-care cup test, a test performed on a qualitative analyzer, and a test performed on a quantitative analyzer.  The United States and the State of Wisconsin allege that Acacia and Freund knew that these duplicative tests served no medical purpose, and that they submitted or caused to be submitted claims to Wisconsin Medicaid for what the United States and the State of Wisconsin contend were duplicative, medically unnecessary tests in order to obtain reimbursement to which they were not entitled.

G.      The United States and the State of Wisconsin further contend that, between June 1, 2011 and December 31, 2014, Acacia and Freund knowingly and falsely submitted or caused to be submitted claims to Wisconsin Medicaid for telemedicine services rendered to Acacia's Medicaid patients by psychiatrists located outside the United States, in violation of Medicaid regulations.

H.      The conduct described in recitals E, F, and G, above, is the "Covered Conduct" for this settlement of the Civil Action

I.      Following the filing of the Civil Action, Wisconsin Medicaid suspended certain .payments to Acacia ("the Medicaid Fee-For-Service Suspended Payments").  The amount of the Medicaid Fee-For-Service Suspended Payments is $173,114.71.

J.      Americhoice, Anthem BCBS Medicaid, Children's Community Health Plan, Cenpatico, iCare, Milwaukee County Family Care, Molina Healthcare of Wisconsin, and United Behavioral Health operate health maintenance organizations under contracts with Wisconsin to

provide medical coverage to certain Medicaid beneficiaries (collectively, the "Medicaid HMOs"). Following the filing of the Civil Action, the Medicaid HMOs suspended certain payments to Acacia ("the Medicaid HMO Suspended Payments"). The amount of the Medicaid HMO Suspended Payments is $1,773,047.

K. This Settlement Agreement is neither an admission of liability by Acacia, Freund or Isaac nor a concession by the United States and the State of Wisconsin that their claims are not well founded.

L. Presser has claimed entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement as well as attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1. Acacia and Freund shall pay to the United States and Wisconsin $2,200,000 ("Cash Settlement Amount"), of which $1,804,000 is restitution.

A. On the Effective Date of this Agreement, Acacia and Freund shall pay $294,775.38 pursuant to the terms of the escrow agreements dated May 31, 2018 and December 4, 2018.

B. Within 120 days from the Effective Date of this Agreement, Acacia and Freund will pay $955,224.62, plus interest at 2% per annum, by electronic funds transfer pursuant to written instructions from the United States Attorney's Office for the Eastern District of Wisconsin.

C.      Over a period of five (5) years, Acacia and Freund shall pay the remaining $950,000, plus interest at 5% per annum, pursuant to the Note attached as Exhibit A.

D.      The Note shall be secured by a Mortgage on Freund's interest in the property located at 159 Acres Road, Unit 204, Monroe, New York.  The Mortgage is attached as Exhibit B.

E.      Collectively, the Cash Settlement Amount and the interest received thereon by the United States and Wisconsin shall be referred to as the "Cash Settlement Proceeds."

2.      Conditioned upon the United States and Wisconsin receiving the Cash Settlement Proceeds as described in paragraph 1, above, the United States and Wisconsin agree that they shall pay to Presser by electronic funds transfer eighteen (18) percent of each such payment received under paragraph 1 as soon as feasible after receipt of the payment.

3.      Acacia hereby agrees that the United States and Wisconsin shall retain the Medicaid Fee-For-Service Suspended Payments forevermore.  Acacia expressly relinquishes any and all rights of any kind that it may have with respect to those funds, including, but not limited to: any and all claims or rights to have an overpayment determined under any federal or state law, any and all rights to payment of those funds, and any and all rights to appeal, whether formally or informally and whether administratively or judicially, the right of the United States and/or Wisconsin to retain those funds, and any other rights Acacia  may have to challenge the Withholding or the Suspension in any respect.

4.      Acacia hereby transfers and assigns to the United States and Wisconsin (as permitted by 42 C.F.R. § 447.10(e)) as absolute owners all of Acacia's rights to the Medicaid HMO Suspended Payments, including all rights of action that have or will accrue to Acacia. Acacia expressly warrants that it has not executed any agreement or covenant with any of the

Medicaid HMOs that bars assignment of the Medicaid HMO Suspended Payments or that requires the consent of the Medicaid HMOs before such assignment may occur. Acacia will provide notice to each of the Medicaid HMOs (with a copy to counsel for the United States and Wisconsin) of the assignment of the Medicaid HMO Suspended Payments within 5 day of the Effective Date of this Agreement. Acacia further authorizes the United States and Wisconsin in their own name to take all legal steps they may deem necessary or proper in connection with the Medicaid HMO Suspended Payments. Acacia further covenants to assist the United States and Wisconsin in any actions undertaken by the United States and Wisconsin concerning the Medicaid HMO Suspended Payments, including, but not limited to, providing any documents, information, or testimony reasonably necessary to assist the United States and Wisconsin. Finally, Acacia and Freund release and waive any and all claims of any nature against the United States and Wisconsin related to or arising out of the Medicaid HMO Suspended Payments.

5.     Subject to the Paragraph 8 (concerning excluded claims) and Paragraph 20 (concerning bankruptcy proceedings commenced with 91 days of the Effective Date of this Agreement or any payment made under this Agreement), and conditioned upon Acacia's and Freund's full payment of the Cash Settlement Proceeds, the United States releases Acacia, Freund, and Isaac from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of unjust enrichment.

6.     Subject to the Paragraph 8 (concerning excluded claims) and Paragraph 20 (concerning bankruptcy proceedings commenced with 91 days of the Effective Date of this Agreement or any payment made under this Agreement), and conditioned upon Acacia's and Freund's full payment of the Cash Settlement Proceeds, Wisconsin releases Acacia, Freund, and

Isaac from any civil or administrative monetary claim Wisconsin has for the Covered Conduct under the Wisconsin False Claims Statute, Wis. Stat. § 49.485, the Wisconsin Medical Assistance Fraud Statute, Wis. Stat. § 49.49(4m) *et seq.*, or the common law theories of unjust enrichment.

7.      Subject to the exceptions in Paragraph 8 (concerning excluded claims), and conditioned upon Acacia's and Freund's full payment of the Cash Settlement Proceeds, Presser, for herself and for her heirs, successors, attorneys, agents, and assigns, agrees to waive any existing or currently pending claim against Acacia and Freund, and releases Acacia, Freund and Isaac from any and all claims that Presser has asserted, could have asserted, or may assert in the future against them, including without limitation the matters set forth in the Presser Action and any other claim Presser has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 and on behalf of the State of Wisconsin under the Wisconsin False Claims Act, Wis. Stat. § 49.485, Wisconsin's Medical Assistance Law, Wis. Stat. § 20.931, Wisconsin's Medical Assistance offenses, Wis. Stat. §§ 49.49, 946.91 and/or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud. Presser, for herself, and for her heirs, successors, attorneys, agents, and assigns, also releases Isaac, Freund, Acacia, and its officers, agents, and employees, from any liability to Presser arising from the filing of the Presser Action, or under 31 U.S.C. § 3730(d), for expenses or attorney's fees and costs.

8.      Notwithstanding the releases given in Paragraphs 5, 6, and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States and Wisconsin are specifically reserved and are not released:

          a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or state revenue codes;

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal or State health care programs;

d.      Any liability to the United States (or its agencies) or Wisconsin for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Except as explicitly stated in this Agreement, any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due;

i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

j.      Any civil or administrative liability that Acacia, Freund, or Isaac has or may have to Wisconsin or to individual consumers or state program payors under any statute, regulation, or rule not expressly covered by the release in Paragraphs 5 and 6, above, including, but not limited to, any and all of the following claims: (i) State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws.

9.      Voluntary Exclusions of Acacia, Freund, and Isaac.

a.      In compromise and settlement of the rights of OIG-HHS to seek to exclude Acacia, Freund, and Isaac pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the

Covered Conduct, (i) Acacia agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 20 years, (ii) Freund agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 20 years, and (iii) Isaac agrees to be excluded under this statutory provision from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f), for a period of 5 years. The exclusions of Acacia, Freund, and Isaac shall be effective upon the Effective Date of this Agreement.

    b.  The exclusions of Acacia, Freund, and Isaac shall have national effect. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Acacia, Freund, or Isaac in any capacity while Acacia, Freund, or Isaac are excluded. This payment prohibition applies to Acacia, Freund, or Isaac and all other individuals and entities (including, for example, anyone who employs or contracts with Acacia, Freund, or Isaac, and any hospital or other provider where Acacia, Freund, or Isaac provides services). The exclusions apply regardless of who submits the claim or other request for payment. Violation of the conditions of exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Acacia, Freund, and Isaac further agree to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of exclusion. Acacia, Freund, and Isaac waive any further notice of exclusion and agree not to contest such exclusions either administratively or in any state or federal court.

c.      Reinstatement to program participation is not automatic.  If Acacia, Freund, or Isaac wishes to be reinstated, Acacia, Freund, or Isaac must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Such request may be made to the OIG no earlier than 120 days prior to the expiration of the applicable period of exclusion.  Reinstatement becomes effective upon application by Acacia, Freund, or Isaac, approval of the application by the OIG, and notice of reinstatement by the OIG. Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program does not reinstate Acacia's, Freund's, or Isaac's eligibility to participate in these programs.

10.      Acacia and Freund have provided sworn financial disclosure statements, including but not limited an Attestation from Freund dated August 20, 2018 regarding his charitable donations, to the United States and Wisconsin (the "Financial Statements").  The United States and Wisconsin have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement.  Acacia and Freund warrant that those Financial Statements are complete, accurate, and current.  If the United States or Wisconsin learn of asset(s) in which Acacia or Freund had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States or Wisconsin learn of any misrepresentation by Acacia or Freund on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $50,000 or more, the United States and Wisconsin may at their option:  (a) rescind this Agreement and reinstate the Civil Action based on the Covered Conduct, (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Acacia or Freund previously undisclosed; or (c) exercise their rights under the Note attached as Exhibit A.  Acacia and Freund agree not to contest any collection action undertaken

by the United States or Wisconsin pursuant to this provision, and immediately to pay the United States or Wisconsin all reasonable costs incurred in such an action, including attorney's fees and expenses.

11.　　In the event that the United States or Wisconsin, pursuant to Paragraph 10 (concerning disclosure of assets), opts to rescind this Agreement, Acacia and Freund agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or Wisconsin within 120 calendar days of written notification to Acacia and/or Freund that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on December 28, 2016.

12.　　Acacia, Freund, and Isaac waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13.　　Acacia, Freund, and Isaac fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Acacia, Freund, and/or Isaac has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.　　Acacia, Freund, and Isaac fully and finally release Wisconsin, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and

expenses of every kind and however denominated) that Acacia, Freund, and/or Isaac has

asserted, could have asserted, or may assert in the future against the Wisconsin, and its agencies,

officers, agents, employees, and servants related to the Covered Conduct and Wisconsin's

investigation and prosecution thereof.

15. The Cash Settlement Amount shall not be decreased as a result of the denial of

claims for payment now being withheld from payment by any Medicare contractor (e.g.,

Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer such as

Medicaid or the Medicaid HMOs related to the Covered Conduct. Acacia and Freund agree not

to resubmit to any Medicare contractor or any state payer such as Medicaid or the Medicaid

HMOs any previously denied claims related to the Covered Conduct, agrees not to appeal any

such denials of claims, and agrees to withdraw any such pending appeals.

16. Acacia and Freund agree to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Acacia, its present or

former officers, directors, employees, shareholders, and agents, or Freund, in connection with:

(1) the matters covered by this Agreement;

(2) the United States' and Wisconsin's audit(s) and civil investigation(s) of

the matters covered by this Agreement;

(3) Acacia's or Freund's, investigation, defense, and corrective actions

undertaken in response to the United States' and Wisconsin's audit(s) and

civil investigation(s) in connection with the matters covered by this

Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement; and

(5)    the payment Acacia and Freund make to the United States and Wisconsin pursuant to this Agreement

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Acacia and Freund.  Acacia and Freund shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Acacia, any of its subsidiaries or affiliates, or Freund to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Acacia and Freund further agree that, within 90 days of the Effective Date of this Agreement, they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Acacia, any of its subsidiaries or affiliates, or Freund and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs.  Acacia and Freund agree that the United States and Wisconsin, at a minimum, shall be entitled to recoup from them any overpayment plus applicable interest and penalties as a result of the inclusion of such

Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States and/or Wisconsin pursuant to the direction of the United States Attorney's Office for the Eastern District of Wisconsin and/or the affected agencies. The United States and Wisconsin reserve their rights to disagree with any calculations submitted by Acacia, any of its subsidiaries or affiliates, or Freund on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on any cost reports, cost statements, or information reports.

        d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States or Wisconsin to audit, examine, or re-examine the books and records of Acacia or Freund or to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     Acacia and Freund agree that each waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.     The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Acacia and Freund, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual

promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Acacia or Freund was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Acacia or Freund commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Acacia's or Freund's debts, or seeking to adjudicate Acacia or Freund as bankrupt or insolvent or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Acacia or Freund or for all or any substantial part of their assets, Acacia and Freund agree as follows:

a.     Acacia's and Freund's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Acacia and Freund shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) their obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Acacia or Freund was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Acacia and/or Freund.

b.     If Acacia's or Freund's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and/or Wisconsin, at each's sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Acacia and/or Freund for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 5, above.  Acacia and Freund agree that (i) any such

claims, actions, or proceedings brought by the United States and/or Wisconsin are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Acacia and Freund shall not argue or otherwise contend that the United States' and/or Wisconsin's claims, actions, or proceedings are subject to an automatic stay; (ii) Acacia and Freund shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States and/or Wisconsin within 120 calendar days of written notification to Acacia and/or Freund that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on December 28, 2016; and (iii) the United States and/or Wisconsin have a valid claim against Acacia and Freund in the amount of $14,529,039, and the United States and/or Wisconsin may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.     Acacia and Freund acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

21.     Upon receipt of the payment described in Paragraph 1(A), above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Federal Rule of Civil Procedure 41. Such stipulation shall provide, *inter alia*, for the release of all Writs of Attachment filed in that matter.

22.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

23.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

24.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Wisconsin.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

26.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

28.     This Agreement is binding on Acacia's, Freund's, and Isaac's successors, transferees, heirs, and assigns.  This Agreement is also binding on Presser's successors, transferees, heirs, and assigns.

29.     All parties consent to the United States' and/or Wisconsin's disclosure of this Agreement, and information about this Agreement, to the public.

30.     Presser and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Presser and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, the State of Wisconsin, and their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action, the Presser Action, or under 31 U.S.C. § 3730 or state law, and from any claims to a share of the proceeds of this Agreement, the Civil Action, and/or the Presser Action.

31.     Acacia, Freund, and Isaac fully and finally release Presser from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Acacia, Freund, or Isaac have asserted, could have asserted, or may assert in the future against Presser related to the Presser Action, the Civil Action, the Covered Conduct and/or Presser's investigation and prosecution thereof.

32.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin


DATED: _____     BY:   _____
MICHAEL CARTER
Assistant United States Attorney
United States Attorney's Office for the Eastern District of
Wisconsin


DATED: _____     BY:   _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

<u>STATE OF WISCONSIN</u>


DATED: _____     BY:   _____
Francis X. Sullivan
Director of the Medicaid Fraud Control
and Elder Abuse Unit
Wisconsin Department of Justice

DATED: _____    BY: _____
                          Anthony Baize
                          Inspector General
                          Office of the Inspector General
                          Wisconsin Department of Health Services


ACACIA MENTAL HEALTH CLINIC, LLC AND ABRAHAM FREUND

DATED: 3/21/19    BY: _____
                          ABRAHAM FREUND
                          Personally and for Acacia Mental Health Clinic, LLC

DATED: 3/26/2019    BY: _____
                          PATRICK COFFEY
                          Counsel for Acacia Mental Health Clinic, LLC and
                          Abraham Freund


ISAAC FREUND

DATED: 3/21/19    BY: _____
                          ISAAC FREUND


~~DATED: _____    BY: _____~~
                          ~~XXX~~
                          ~~Counsel for Isaac Freund~~


ROSE PRESSER

DATED: _____    BY: _____
                          ROSE PRESSER


DATED: _____    BY: _____
                          XXX
                          Counsel for Rose Presser

19

31.     Acacia, Freund, and Isaac fully and finally release Presser from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Acacia, Freund, or Isaac have asserted, could have asserted, or may assert in the future against Presser related to the Presser Action, the Civil Action, the Covered Conduct and/or Presser's investigation and prosecution thereof.

32.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin

DATED: March 21, 2019     BY:     _____
MICHAEL CARTER
Assistant United States Attorney
United States Attorney's Office for the Eastern District of
Wisconsin

DATED: _____     BY:     _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

STATE OF WISCONSIN

DATED: _____     BY:     _____
Francis X. Sullivan
Director of the Medicaid Fraud Control
and Elder Abuse Unit
Wisconsin Department of Justice

31. Acacia, Freund, and Isaac fully and finally release Presser from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Acacia, Freund, or Isaac have asserted, could have asserted, or may assert in the future against Presser related to the Presser Action, the Civil Action, the Covered Conduct and/or Presser's investigation and prosecution thereof.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin

DATED: _____ BY: _____
MICHAEL CARTER
Assistant United States Attorney
United States Attorney's Office for the Eastern District of
Wisconsin

DATED: **3/26/19** BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

STATE OF WISCONSIN

DATED: _____ BY: _____
Francis X. Sullivan
Director of the Medicaid Fraud Control
and Elder Abuse Unit
Wisconsin Department of Justice

31. Acacia, Freund, and Isaac fully and finally release Presser from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Acacia, Freund, or Isaac have asserted, could have asserted, or may assert in the future against Presser related to the Presser Action, the Civil Action, the Covered Conduct and/or Presser's investigation and prosecution thereof.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin

DATED: _____     BY: _____
MICHAEL CARTER
Assistant United States Attorney
United States Attorney's Office for the Eastern District of
Wisconsin

DATED: _____     BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

STATE OF WISCONSIN

DATED: March, 21, 2019     BY: *Francis Sullivan*
Francis X. Sullivan
Director of the Medicaid Fraud Control
and Elder Abuse Unit
Wisconsin Department of Justice

DATED: 3/15/2019     BY: _____
                          Anthony Baize
                          Inspector General
                          Office of the Inspector General
                          Wisconsin Department of Health Services


## ACACIA MENTAL HEALTH CLINIC, LLC AND ABRAHAM FREUND


DATED: _____     BY: _____
                          ABRAHAM FREUND
                          Personally and for Acacia Mental Health Clinic, LLC


DATED: _____     BY: _____
                          PATRICK COFFEY
                          Counsel for Acacia Mental Health Clinic, LLC and
                          Abraham Freund


## ISAAC FREUND


DATED: _____     BY: _____
                          ISAAC FREUND


DATED: _____     BY: _____
                          XXX
                          Counsel for Isaac Freund


## ROSE PRESSER


DATED: _____     BY: _____
                          ROSE PRESSER


DATED: _____     BY: _____
                          XXX
                          Counsel for Rose Presser

DATED: _____     BY: _____
                          Anthony Baize
                          Inspector General
                          Office of the Inspector General
                          Wisconsin Department of Health Services


ACACIA MENTAL HEALTH CLINIC, LLC AND ABRAHAM FREUND


DATED: _____     BY: _____
                          ABRAHAM FREUND
                          Personally and for Acacia Mental Health Clinic, LLC


DATED: _____     BY: _____
                          PATRICK COFFEY
                          Counsel for Acacia Mental Health Clinic, LLC and
                          Abraham Freund

                     ISAAC FREUND

DATED: _____     BY: _____
                          ISAAC FREUND


DATED: _____     BY: _____

                          Counsel for Isaac Freund

                     ROSE PRESSER

DATED: 3/22/19        BY: _____
                          ROSE PRESSER


DATED: 3/22/19        BY: _____
                          PATRICK KNIGHT
                          Counsel for Rose Presser

## Promissory Note

1.      For value received, and pursuant to the Settlement Agreement effective March __, 2019, Acacia Mental Health Clinic, LLC ("Acacia"), and Abraham Freund ("Freund") (jointly, Acacia and Freund are referred to herein as "Maker"), for themselves and their successors and assigns, promise to pay to the United States of America ("Holder"), or its assignee, the full principal sum of $950,000, together with interest accruing at the rate of 5.0% per annum ("Outstanding Balance") as set forth below.

### Schedule of Payments (including interest)

|  | Payment | Principal | Interest | Outstanding Balance |
|---|---|---|---|---|
| Beginning Balance |  |  |  | $ 950,000.00 |
| Year 1 (by March 31, 2020) | $ 190,000.00 | $142,500.00 | $ 47,500.00 | $ 807,500.00 |
| Year 2 (by March 31, 2021) | $ 200,000.00 | $159,625.00 | $ 40,375.00 | $ 647,875.00 |
| Year 3 (by March 31, 2022) | $ 200,000.00 | $167,606.25 | $ 32,393.75 | $ 480,268.75 |
| Year 4 (by March 31, 2023) | $ 250,000.00 | $225,986.56 | $ 24,013.44 | $ 254,282.19 |
| Year 5 (by March 31, 2024) | $266,996.30 | $254,282.19 | $ 12,714.11 | $ - |
| Total | $2,356,996.30 |  |  |  |

2.      Payments will be made by wire transfer per instructions from the United States Attorney's Office for the Eastern District of Wisconsin ("USAO"). If there is any change in the method or instructions of payment, the Holder shall inform the Maker at least 5 business days before payment is due.

3.      This Note may be prepaid, in whole or in part, without penalty or premium. Partial payment does not alter the interest rate applicable each year as reflected in paragraph 1 of this Note.

4.      Pursuant to the Settlement Agreement, Freund will execute the attached Mortgage for the property located at 159 Acres Road, Unit 204, Monroe, New York ("the Mortgaged Premises") to secure this Note.

EXHIBIT

B

5.      Maker is in default of this Note on the date of occurrence of any of the following events ("Events of Default').

     A.      Freund's failure to obtain and deliver the executed Mortgage to the United States on the Effective Date of the Settlement Agreement.

     B.      Maker's failure to pay any amount provided in this Note within 10 days of when such payment is due and payable; provided, however, that an Event of Default does not occur if, because of events outside Maker's control, the Holder does not receive the paid amount after transmission by the Maker.  Maker will make its best efforts to insure Holder's receipt of the paid amount.

     C.      If prior to making the full payment of the amount due under this Note, any case, proceeding, or other action is instituted;

          a.      under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, seeking to have any order for relief of debtors, or seeking to adjudicate Acacia or Freund, directly or indirectly, as bankrupt or insolvent; or

          b.      seeking appointment of a receiver, trustee, custodian or other similar official for Acacia or Freund or for all or any substantial part of their assets.

     D.      If, prior to making the full payment of the amount due under this Note, any action is commenced by any party to foreclose on any mortgage, lien, or other security interest on the Mortgaged Premises, including, but not limited to, any mortgage, lien, or security interest senior to the Mortgage attached hereto.

     E.      If Paragraph 8 of the Settlement Agreement (concerning financial disclosures) is violated.

6.      The Maker shall provide the United States written notice of an Event of Default within five (5) business days of such event by overnight mail, delivered to the USAO.

7.      Upon the occurrence of an Event of Default, Maker will have 10 business days to cure the Event of Default ("Cure Period").  If Maker does not cure its Default within the Cure Period, and without further notice or presentment and demand by the United States:

     A.      The Outstanding Balance shall immediately increase by fifty percent (the "Default Amount").  For example, if Maker defaults after making the first two annual payments described in Paragraph 1 and then fails to cure the Event of Default within the Cure Period, the Outstanding Balance of $647,875.00 will immediately become a Default Amount of $971,812.50.

     B.      The Default Amount shall be immediately due and payable.  Interest shall accrue on the Default Amount from the date of the Event of Default at 12 per cent per annum, compounded daily.

C.     The United States may take any and all actions provided under law and equity, or provided by the Settlement Agreement, to collect the Default Amount pursuant to this Note and/or pursuant to the Mortgage, including immediate foreclosure on the Mortgage.

D.     The United States retains any and all other rights and remedies it has or may have under law and equity, and may exercise those rights and remedies.

E.     No failure or delay on the part of the United States to exercise any right or remedy shall operate as a waiver of the United States' rights.  No partial or single exercise by the United States of any right or remedy shall operate as a waiver of the United States' rights.

F.     Maker will pay the United States all reasonable costs of collection, including reasonable attorneys' fees and expenses.

8.     Waiver by the Holder of any Event of Default by Maker, its successors, or assigns will not constitute a waiver of a subsequent default.  Failure by the Holder to exercise any right, power, or privilege which it may have because of an Event of Default will not preclude the exercise of such right, power, or privilege so long as such default remains uncured or if a subsequent default occurs.

9.     This Note shall be governed and construed according to the laws of the United States of America.

10.    Maker acknowledges that it is entering into this Note freely, voluntarily, and with no degree of compulsion whatsoever.

11.    Acacia shall provide the USAO a certified copy of a resolution of Acacia's members affirming that it has authority to enter into this Note, and that its members have:  (1) reviewed this Note, the Mortgage, and the Settlement Agreement; (2) consulted with legal counsel in connection with this matter; (3) voted to authorize Acacia to enter into this Note; and (4) voted to authorize the corporate officer identified below to execute this Note and to take such further steps as necessary to carry out the terms of this Note.

IN WITNESS THEREOF, Acacia Mental Health Clinic, LLC, and Abraham Freund intending to be legally bound hereby and so bind their successors and assigns, executed this Note on this ꝝ ꝝ day of March, 2019.

by:     _____
        Abraham Freund
        For himself individually and for Acacia Mental Health Clinic, LLC

Corporate Acknowledgment

State of New York

On March 22, 2019, before me personally came Abraham Freund to me known who, being duly sworn, did depose and state that (1) he resides in the State of New York, (2) is the sole member of Acacia Mental Health Clinic, LLC, the limited liability company described in and which executed the above instrument, (3) and that he signed his name thereto.

Notary Public
State of New York
My Commission Expires: April 28, 2022

CHRISTOPHER JOSEPH MCHALE
Notary Public - State of New York
NO. 01MC6302189
Qualified in Orange County
My Commission Expires Apr 28, 2022

After Recording Return To:

United States Attorney's Office
Attn: AUSA Michael Carter
517 E. Wisconsin Ave., Suite 530
Milwaukee, WI 53202

_____

# MORTGAGE

## I.    DEFINITIONS

Words used in multiple sections of this document are defined below.

**(A)  "Security Instrument"** means this document, which is dated March 22, 2019.

**(B)  "Debtor"** is Abraham Freund, the mortgagor under this Security Instrument.

**"Creditor"** is the United States of America.   Creditor is the mortgagee under this Security Instrument.

**(C)  "Note"** means the promissory note signed by Debtor and Acacia Mental Health Clinic, LLC, and dated March 22, 2019.   The Note states that Debtor Abraham Freund owes Creditor $950,000, plus interest.   Debtor Abraham Freund has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 31, 2024.

**(D)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(E)  "Debt"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(F) "Applicable Law"** means the law of the United States of America.

## II.    WAIVER OF HOMESTEAD EXEMPTION.

Abraham Freund, hereby voluntarily and knowingly waives his rights to claim any homestead exemption upon foreclosure of this Mortgage and sale of the Property, including any rights under NY CPLR § 5206.



III.  TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Creditor:  (i) the repayment of the Debt, and all renewals, extensions and modifications of the Note; and (ii) the performance of Debtor's covenants and agreements under this Security Instrument and the Note.   For this purpose, Debtor does hereby mortgage, grant and convey to Creditor, with power of sale, his full interest in the following described property located in the _____County_____

[Type of Recording Jurisdiction]

of __Orange_____:

[Name of Recording Jurisdiction]


Beginning at a point in the southwesterly right of way line of Acres Road, 50 feet wide, said point being the following courses and distances along said line of Acres Road from the intersection formed by the same with the southeasterly right of way line of Krolla Court as shown on a certain plat entitled "Final subdivision Plat Forest Acres," Village of Kiryas Joel, Orange County, New York and filed in the Orange County Clerk's office September 24, 1979 as Map No. 5045; thence,

A.    S. 44º-10'-52" E. 290.65 feet to a bend point; thence,

B.    S. 33º-18'-06" E. 63.61 feet to the point of beginning and running; thence,

1.    S. 56º-41'-54" W. 150.00 feet through Lot 40 Block 'C' as shown on said plat to a point in the northeasterly line of a retention pond area; thence,

2.    N. 33º-18'-06" W. 25.42 feet along the same to a point; thence,

3.    N. 45º-49'-08" E. 152.745 feet along the division line of Lot 40 and 41, Block 'C' to a point in the aforementioned line of Acres Road; thence,

4.    S. 33º-18'-06" E. 54.25 feet along the same to the point or place of beginning.

Subject to a 10 ft. wide sanitary sewer easement along the southwesterly line of the above described premises.

All as shown on a certain plat entitled "Subdivision of Lot 39, 40 & 41, Block 'C' - Forest Acres, Village of Kiryas Joel, Orange County, New York

prepared by Raimondi Associates, P.C., Monroe, New York Dated: May 20, 1984.

Being and designated as a portion of Lot 40, Block C, on a certain map entitled Forest Acres, prepared by Raimondi Associates, P.C., Monroe, New York, dated December, 1977 and last revised December 20, 1978 and filed in the Orange County Clerk's Office on September 24, 1979 as Map #5045.

Subject to all covenants, restrictions, declarations, offers of dedications, easements, grants and so forth of record and notes and conditions as found on the filed subdivision map and, utilities as built and existing.

Original grantor reserves a drainage easement over said premises to connect footing drains to master storm drainage systems in the event the same is ever constructed.

Subject to and together with an easement for ingress and egress across the rear, side and front to this and the three adjoining premises of Lot 40, Block C of the aforesaid subdivision map, for the purpose of the repair, improvement and use and enjoyment of the premises being conveyed. The intent of this easement is to provide for common use. This shall be a covenant running with the land. ·

That a copy of the plot plan is annexed hereto and made a part hereof. Further, the plot plan shows the location of the proposed parking.

Being and intended to be a portion of the premises conveyed to Moses Friedman by deed dated March 30, 1984 and recorded in the Orange County Clerk's Office on April 3, 1984 in Liber 2279 at page 878.

Subject to and together with the right to use in common with the owners of premises of Block C, Lot 40 C & D of the aforesaid subdivision, the parking area as located on Block C, Lot 40 D. That the aforesaid two lot owners shall jointly have the right to use said proposed parking area together with an easement for ingress and egress to their lots. That the aforesaid two lot owners shall jointly share the cost of maintenance, repair and improvements of the parking area.

In the event individual parking spaces are built on each persons property, this easement shall automatically terminate.

Subject to a drainage easement as shown on the filed subdivision map #5045 which shall include an easement for the proposed channel as shown on the filed subdivision map.

There exists a retention pond and a channel which is an intrical part of the storm drainage system throughout the subdivision for which the premises herein form a part.

The premises are conveyed subject to the obligation of the grantee herein to keep the channel area at all times free and clear of debris and not to fill or in any manner disturb the channel area as in existence or to be constructed upon the premises being conveyed.

which currently has the address of 159 Acres Road, Unit 204, Monroe, New York ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

DEBTOR COVENANTS that Debtor, is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Debtor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

IV.     DEBTOR'S COVENANTS

1.      Payment.   Debtor shall pay when due the principal of, and interest on, the debt evidenced by the Note and any charges due under the Note.

2.      Taxes, liens, etc.   Debtor shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the Property and promptly deliver to the government without demand receipts evidencing such payments. Any failure to pay any such taxes, liens, judgement, encumbrances, or assessments shall constitute an event of default under this Security Instrument.

3.      Property Insurance.   Debtor agrees to keep the property insured against loss or damage by fire, extended coverage perils and such other hazards as Creditor may require and under insurance policies approved by the Creditor in the amount of the full replacement value of the improvements on the Property.   Debtor further agrees, at Creditor's request, to deliver such policies to the Creditor.   If the property is located in a designated flood hazard area, Debtor also shall keep the property insured as required by 42 U.S.C. § 4001 *et seq.* and government regulations.   All insurance policies and renewals shall include a standard mortgagee clause in favor of the Creditor.   Unless Debtor and Creditor otherwise agree in writing, insurance proceeds shall be applied to restoration or

repair of the Property, provided Creditor deems restoration or repair economically feasible.

4.     Other covenants; Inspections.   Debtor covenants not to commit waste nor suffer waste to be committed on the Property, to keep the Property in good condition and repair, to keep the Property free from future liens superior to the lien of this Mortgage and to comply with all laws, ordinances and regulations affecting the Property.

Creditor or its agent may make reasonable entries upon and inspections of the Property.   If it has reasonable cause, Creditor may inspect the interior of the improvements on the Property. Creditor shall give Debtor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

V.     DEFAULT AND REMEDIES.   Debtor agrees that time is of the essence with respect to payment of principal and interest when due, and in the performance of the terms, conditions and covenants contained herein or in the Note secured hereby. In the event of default under the terms of this Security Instrument or the Note, Creditor may, at its option, declare the whole amount of the unpaid principal and accrued interest due and payable, and collect it in a suit at law or by foreclosure of this Mortgage or by the exercise of any other remedy available at law or equity. If this Mortgage is subordinate to a superior mortgage lien, a default under the superior mortgage lien constitutes a default under this Mortgage. Creditor may waive any default without waiving any other subsequent or prior default by Debtor.

VI.     NOTICE.   Unless otherwise provided in this Security Instrument or the Note, prior to any acceleration Creditor shall mail notice to Debtor specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 10 days from the date the notice is mailed to Debtor by which date the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration.

VII.     EXPENSES AND ATTORNEY FEES. In case of default, whether abated or not, all of Creditor's costs and expenses, including reasonable attorney fees, to the extent not prohibited by law shall be added to the principal, become due as incurred, and in the event of foreclosure be included in the judgment.

VIII.     RECEIVER. Upon default or during the pendency of any action to foreclose this Mortgage, Debtor consents to the appointment of a receiver of the Property, including homestead interest, to collect the rents, issues and profits of the Property during the pendency of such an action, and such rents, issues and profits when so collected shall be held and applied as the court shall direct.

IX.     CONSENT REQUIRED FOR TRANSFER. Debtor shall not transfer, sell, or convey any legal or equitable interest in the Property (by deed, land contract, option, long-term lease or in any other way) without the prior written consent of Creditor, unless either the indebtedness secured by this Mortgage is first paid in full or the interest

conveyed is a mortgage or other security interest in the Property, subordinate to the lien of this Mortgage. The entire indebtedness under the Note secured by this Mortgage shall become due and payable in full at the option of Creditor without notice, which notice is hereby waived, upon any transfer, sale, or conveyance made in violation of this paragraph. A violation of the provisions of this paragraph will be considered a default under the terms of this Mortgage and the Note it secures.

X.      ASSIGNMENT OF RENTS. Debtor hereby transfers and assigns absolutely to Creditor, as additional security, all rents, issues and profits which become or remain due (under any form of agreement for use or occupancy of the Property or any portion thereof), or which were previously collected and remain subject to Debtor's control following any default under this Mortgage or the Note secured hereby and delivery of notice of exercise of this assignment by Creditor to the tenant or other user(s) of the Property in accordance with the provisions of applicable New York law. This assignment shall be enforceable with or without appointment of a receiver and regardless of Creditor's lack of possession of the Property.

_Abraham Freund_

## ACKNOWLEDGMENT

STATE OF   NEW YORK                              )
                                                                     ) ss.
_____Orange_____ COUNTY )

Personally came before me on ___22 March 2019___, the above-named

_Abraham Freund_____ to    me
known to be
The person(s) who executed the foregoing instrument and acknowledged same.

_Christopher J. McHale_____

Notary Public, State of New York

My commission (is permanent) (expires: _April 28, 2022____ )

CHRISTOPHER JOSEPH MCHALE
Notary Public - State of New York
NO. 01MC6302189
Qualified in Orange County
My Commission Expires Apr 28, 2022

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required): ☐ Green Bay Division  ☒ Milwaukee Division

## I. (a) PLAINTIFFS

United States of America

## DEFENDANTS

Acacia Mental Health Clinic, LLC and Abraham Freund

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Milwaukee
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

AUSA Michael Carter and Emily Constantine, 517 E. Wisconsin Ave., Suite 530, Milwaukee, WI 53202

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1345 and 28 U.S.C. 3306

Brief description of cause:
Breach of settlement agreement and promissory note as well as fraudulent conveyance of real property

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
1,730,006.12

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Lynn Adelman   DOCKET NUMBER   16-cv-1718

DATE
06/24/2020

SIGNATURE OF ATTORNEY OF RECORD
/s Michael A Carter

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use
  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the
  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for:  Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*GINA M. COLLETTI, CLERK OF COURT*

Date: _____          _____
                                            *Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

|  |  |
|---|---|
| _____ ) ) ) ) ) *Plaintiff(s)* ) v. ) ) ) ) _____ ) *Defendant(s)* ) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*GINA M. COLLETTI, CLERK OF COURT*

Date: _____          _____
                                        *Signature of Clerk or Deputy Clerk*